The first case for argument this morning is 14-7117, Allen v. McDonald. Mr. Morton, whenever you're ready. If the court please, my name is Myers Morton, and I want to apologize in advance. I'm sort of hard of hearing, so I sometimes speak too loudly, and if I do that, I apologize. I represent a widow of a Vietnam veteran whose epitome is a hero. He's a Bronze Star recipient. He was service-connected for PTSD and hearing loss. He also, when he was in Vietnam, was soaked with Agent Orange, which led to prostate cancer. He was 100% service-connected also for prostate cancer. There's enough medical evidence in this record to show that he died from the prostate cancer. It either led to his brain cancer, or it contributed to his demise. But I'm sure you appreciate that the difficulty is that that's not really our job here on appeal. I mean, this case was done on the VA and at the board and at the Veterans Court, and they evaluated the evidence, and that's not really what we're in a position to do here. Yes, Your Honor, I'm not asking the court to evaluate the evidence. My whole argument is the law requires the Secretary to make, shall, it's 38 U.S.C. 511, the Secretary shall decide all questions of law and fact necessary to make a decision. And Virginia law apparently, I'm a Tennessee lawyer, I'm not a Virginia lawyer, but Virginia law apparently says on a death certificate, which was the reason the board gave to turn down her claim for compensation, because the Virginia death certificate does not say prostate cancer led to his death. Well, that wasn't the only ground upon which. It's the first one. It's the very first paragraph. So even if it were true that the doctor who signed the death certificate wasn't authorized by Virginia law to sign the death certificate, you don't dispute that the doctor was qualified to practice medicine and make medical determinations, do you? Well, in Tennessee, Virginia law said the doctor had to be the primary care physician at the end of life, and she wasn't. Dr. Hamadi wasn't his doctor three months before his death. She's a Tennessee doctor. She's not a Virginia doctor. Virginia law says it has to be, it reads that way, but I don't even know if that was the law when he died. And my point is, the law says this federal agency is required to make that determination if this death certificate is legal and valid. And they didn't. They completely ignored the issue. Maybe it was inconvenient. Maybe it was too much work. But my whole point, my whole argument is the law says they shall make, decide all questions of law and fact necessary to make a decision, and the board clearly relied upon that death certificate. Without the death certificate, there's an approximate balance of positive and negative evidence. Didn't the Veterans Court expressly find that Dr. Hamadi was in charge of Ms. Allen's care at the time of his death? I thought that I remember that expressly in their opinion. And that's a fact finding, and we can't unravel those. We have no jurisdiction to. And I'm not asking the court to make any, to question their fact finding. They, the board didn't even touch the illegality of the Virginia death certificate. They didn't even touch it. The Veterans Court, I mean they ignored the issue. I mean, if the board or the Veterans Court had relied exclusively or predominantly on the issue of what the death certificate said, not the underlying conclusion, then I guess I could see your concern. But given, as Judge Moore alluded to, that there wasn't a reliance on the death certificate as a death certificate, it was really on a lot of medical evidence in the record, including that this person who signed it was a physician. But they didn't per se say, death certificate says this, that's the end of the story, right? That's where this court's decision in Cushman comes in. It's in the record. It tainted the record. Any reasonable trier fact… So this is really beyond Cushman in terms of what you're alleging, is it not? I understand, Your Honor. But the medical evidence is evenly balanced. There's an approximate balance. That's what you may say, but we don't evaluate. I mean, you know, the problem is we have, as I'm sure you know, we have a very limited, we have very limited authority in these cases, and it doesn't include looking and reevaluating the evidence, right? That's correct, Your Honor, and I'm not asking you to. I'm saying that there's an issue on whether or not this tainted evidence is valid in Virginia law, and they ignored it. But the problem is, in Cushman, there actually was an altered medical document, right? I mean, so that there was a false statement in the medical record. And here, you're saying that perhaps, and you don't even know for sure, because if Dr. Hamadi was actually licensed in Virginia to also practice law, you don't, you're not limited to, I mean, practice medicine, you're not limited to only one state necessarily, if you get authorized to practice in other states, or if you're practicing in a federal facility, it's possible that she's authorized because of her federal connection to the VA. I mean, you're just guessing that she couldn't sign this, right? That's correct, but the law says the Secretary shall decide that. That's my point. The Board ignored the issue, the Court of Appeals put the… But you're not saying that there's anything about the opinion that Dr. Hamadi expressed in the form of the death certificate that is tainted or improper in any way. You're just saying that because it's on a death certificate, that somehow they shouldn't have been allowed to consider it. Your Honor, I'm saying that she wasn't authorized by the Virginia law, apparently, to sign and make, to give an opinion on the decedent's cause of death. In Virginia law, she can't do that. She's a Tennessee doctor. She's not a Virginia doctor. And, like, I'm not licensed in Virginia, so I've been committing malpractice to give my client advice about Virginia law. That's an issue. The very first reason the Board gave was that death certificate. They had, in the body of their opinion, it was the main reason that they denied this claim. And I don't think the Board or this federal agency should be able to ignore this law that says they shall decide all questions. I don't understand the argument where they say that this widow did not bring the issue up before the Board. It's clearly she brought it up. It's in her testimony. She doesn't understand how a Tennessee doctor can sign a Virginia death certificate. And it just seems to me that if the court plays that this was an inconvenient law and they didn't want to follow it, the question to the appellant is, does the federal agency require to follow the law? Thank you. May it please the Court. Your Honors, Mrs. Allen has raised a constitutional issue, name only. The true substance of the appeal is a challenge to the Board's complex determination of a factual issue that this Court cannot review. You might want to speak up. I mean, we're having a hard time hearing you. I'm sorry, Your Honor. The constitutional issue isn't raised in name only. At bottom, this case is a challenge to the Board's resolution of a complex factual issue. Well, did she raise the question, I mean, in her testimony, she at least questioned how this doctor could sign a death certificate, didn't she? Yes, Your Honor. It's in her testimony. And we acknowledge there's some confusion among the Board in that passage that cited whether or not what specifically she was raising. However, if we can see that it was raised before the Board, the Veterans Court expressly exercised its discretion. The Veterans Court first said it wasn't raised before the Board. And it found that Dr. Kamadi or the death certificate was not inappropriately signed, that it was a valid document. So we believe that Section 511, to the extent it was not reached before the Board, the Veterans Court directly addressed it. But did the Veterans Court actually do an analysis of Virginia law? Yes, Your Honor. We would direct the Court's opinion or the Court's direct attention to page 9 of the Veterans Court's opinion, which is page 15 of the supplemental appendix. And there's a full paragraph discussing whether or not Dr. Kamadi could sign the death certificate. And it determined that there was no issue with the death certificate. So the issue was directly considered by the Veterans Court. And beyond if the Court were to get to this issue of was there a due process violation, as discussed earlier, this case is not Cushman. As we pointed out in our brief, in Cushman, the one piece of evidence was an altered medical opinion. Here, there has been no suggestion that the death certificate does not accurately reflect Dr. Kamadi's professional medical judgment on whether or not Mr. Allen's death was service-connected. Indeed, after issuing the death certificate, she was approached subsequently by a private physician on behalf of Mrs. Allen to ask her to change her opinion, and she reaffirmed it. Is that part of this record? Yes, Your Honor. It's in the Veterans Court's opinion that Dr. Beto Cruz submitted a letter on behalf of Mrs. Allen asking Dr. Kamadi to reconsider listing prostate cancer on the death certificate. And she said, again, no, I affirm my medical opinion. You're kind of overstating some of your facts here, which is making me a little uncomfortable. You said that the Veterans Court specifically found that she was authorized by Virginia law. It didn't make any such findings. It just said that there hadn't been enough evidence presented for them to make that determination. And, you know, if in fact it's true that the legal issue was supposed to be resolved by the board, the Veterans Court saying we don't have enough information to make that determination doesn't answer the question. If we overstated the facts, it wouldn't. And Dr. Kamadi didn't, Dr. Kamadi simply refused to, or didn't act. There wasn't, like, an affirmative statement that I thought this through and I really think I'm right. I mean, you're overstating the facts. Your Honor, I believe on the issue of when Dr. Kamadi was approached subsequently, she declined. She was specifically asked to list prostate cancer. Right, and she declined, period. Yes, so she declined to change her original medical opinion. I know, but the way you're presenting it is as if she went back in, rethought about it, and made this profound statement that she was absolutely sure she was right. She didn't do that. She just declined. The record does not reflect what steps she took before. You have to be a little careful. I mean, you're misstating the record. Now, that's twice in just a few minutes. So, if you want to make your argument, make your argument, but don't tell us things in the record that aren't there. Yes, Your Honor. But, to get back to the constitutional issue, this case is distinguishable from Cushman because the substantive medical opinion is not being challenged. The death certificate reflects that. Dr. Kamadi's medical opinion... If there were a legal question about whether she was even a doctor, there was a question about whether she was authorized to sign, not because she was a Tennessee doctor versus a Virginia doctor, but whether she even held a valid medical license. If that was a question in dispute, would this be potentially a different case? That could go to the weight of... It could, Your Honor, because then was she qualified to render an expert opinion on cause of death. So, that could be a different case, but that's not an issue here. There's no question, there's no suggestion that she's not a doctor, not a valid doctor. She's practicing for the VA. And finally, Your Honor, as was discussed earlier, that the death certificate was one piece of medical evidence that was relied on, which also distinguishes this case from Cushman. There were several medical opinions in the record, including that the cause of death was not service-connected. So, the two critical distinctions between Cushman and this case is there's no question that the substantive medical opinion on the death certificate does not reflect the signing doctor's opinion, and that there was an array of evidence that was relied upon. Was Dr. Kamadi licensed to practice in Virginia? We did not sign the record, and we did not verify that, Your Honor, if she held a Virginia license. So, you're telling me that you don't know the answer? I don't know the answer right now, Your Honor, no. Unless there's any further questions from the court, the government respectfully requests that the court either dismiss the case for lack of jurisdiction or affirm the veteran's responsibility. Well, I have another question. So, in the section of the board's opinion that you directed us to at page 9, the board says, even if Dr. Kamadi is not authorized to practice medicine in Virginia, it's not clear from the plain language of the statute that Dr. Kamadi would be disqualified from signing the death certificate because she nevertheless was a veteran treating oncologist at the time of death. That is a quintessential question of law, isn't it? I mean, if under Virginia law, the question that seems to me is under Virginia law, is a doctor allowed to sign a death certificate if they are a treating physician but not licensed to practice? And so it just seems a little strange to me that the board skirted that by saying it's not clear from the plain language of the statute. Did they have an obligation to resolve that? Your Honor, it's a question of Virginia law, certainly, whether Dr. Kamadi was authorized to sign the death certificate. And the court there left that open. But that's the other side's point, right? I mean, they're saying the statutory violation here is that the statute quite clearly requires that the secretary decide all questions of law and fact necessary to a decision. Now, we can argue about whether or not it's necessary for a decision or not, but given that that question was called out by the Court of Veterans Claims, it appears that that matter has some probative value in this. It could be probative to what – so the ultimate probative issue would be, was Dr. Kamadi authorized to sign this license? Was the death certificate valid? And our response is, if the court would have determined the board should have decided that and they didn't decide that and that was an error. The question is, was there a due process violation in that error? Because, going back to Cushman, the death certificate continues to reflect the issue of serviceability. Well, let's just leave aside due process for a moment and let's just look at the question of law, which I think is fairly presented here. I mean, you've got the statutory requirement that your friend cited to us earlier that says that the secretary shall do this. And so let's forget about due process for a second and talk about whether or not the statute was comported with, all right? So, if in fact her qualification or disqualification for purposes of signing the death certificate was a matter that was in play, that was of some significance in the decision making here, why wasn't it incumbent under the section of the statute for the secretary to resolve that? There was the issue of was it fairly presented or was this presented before the board, before it got to the Veterans Court? Yeah, but I thought you already resolved that with Judge Manley. You conceded to me that it was presented. We conceded there was an issue. There was confusion among the board. Right, so the board didn't get exactly what she was saying, but she did say it. She did say it in her testimony. Yes, and if in fact that's a tainted piece of evidence that the board should not have considered at all, what other evidence? You can't say, well, just because it's tainted, they can still look at what it says. If it's tainted, it can't be considered. So what else was there that if you don't have the death certificate at all, is there sufficient evidence in the record for the board to make their determination? Yes, Your Honor. There are separate medical opinions from VA doctors, one of which was the chief oncologist from the VA Medical Center, who reviewed the file and concluded prostate cancer did not cause death. Okay, but now we've got the problem of our level of review. If in fact we know they relied on tainted evidence, but we can't independently weigh the evidence, how can we say that in fact there's sufficient evidence in the record putting aside the death certificate? Your Honor, we would take issue with even if the death certificate, even if this went back to the board or the RO and they decided, okay, the death certificate was not valid. It still is not tainted evidence for the purpose that it was used. It was used to, the medical opinion reflected on the death certificate. That medical opinion could have been on a death certificate, could have been on a separate memorandum, but the death certificate itself… Right, wouldn't you have to have a separate memorandum? That's the problem. Once the death certificate is an invalid document, how can the board say, well, it's invalid as a matter of law, it is not a legal document, but we're going to consider what it says anyway. But the opinion on the death certificate is not invalid. That's the point. It's that medical judgment on the death certificate that's not invalid, and that was what the difference is with Cushman. In Cushman, you had an altered medical opinion regarding the veteran's continued employability. The opinion reflected on this death certificate would be the same if it was reflected on a separate memorandum or a separate treatment record. The death certificate is a red herring. Unless there's anything further, the government respectfully requests that the Veterans Court Station be affirmed. By this record, Dr. Amati is not a Virginia doctor. And as far as the medical opinions, positive and negative medical opinions and positive medical opinions both say it would have been best to get a biopsy. With a biopsy, we know for sure, but since we don't have a biopsy, nobody knows for sure. I don't understand your first statement. On this record, Dr. Amati is not a Virginia doctor. I don't see any fact-finding that says this. I see the board and the Veterans Court saying it's not in evidence either way, but I don't see that that means that we accept as a factual matter that someone found she's not a Virginia doctor. Everything with her name on it has a Tennessee address. That's what I mean. I don't get to make a fact-finding on appeal. The board didn't make a fact-finding that she's not a Virginia doctor. I don't get to do that on appeal because you tell me next to her name her address was Tennessee. I'm just saying the record, I mean, the record reflects, doesn't reflect, the record does not reflect she's a Virginia doctor. That's what I meant to say. I'm sorry, Your Honor. It just, there's nothing with every address on her medical, she treated him for up to three months before his death and then every one of the VA medical records, she's Mountain Home, Tennessee is her address. That's what I meant to say. By this record, every address is a Tennessee address, Your Honor. That's what I meant to say. Thank you. Thank you. We thank both counsel and the cases submitted.